IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

BRANDON BAITY, *et al.*,

        **Plaintiffs,**

v.

JOHNSON & JOHNSON and
ETHICON, INC.,

        **Defendants.**

Case No. 3:20-CV-01367-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

    Pending before the court is a Motion to Dismiss (Doc. 23) and a Motion to Sever (Doc. 25) filed by Defendants Johnson & Johnson and Ethicon, Inc. For the reasons set forth below, the Court grants in part and denies in part the Motion.

### FACTUAL & PROCEDURAL BACKGROUND

    On December 23, 2020, an initial complaint was filed in this action by 10 plaintiffs, all residents of this district ("Initial Plaintiffs") (Doc. 1). That complaint acknowledges that Defendants are both New Jersey corporations with their principal places of business in New Jersey. In their initial complaint, Plaintiffs alleged 17 causes of action against Defendants for personal injuries arising out of the surgical implantation of TVT, a prescription pelvic mesh manufactured by Ethicon (*Id.*).

    On January 6, 2021, Plaintiffs filed their First Amended Complaint, adding 110 new plaintiffs but not changing the allegations against Defendants (Doc. 12). Of the new plaintiffs, six are alleged to be residents of Illinois, though not of this district ("nonresident Plaintiffs"), and the remaining 104 additions are residents of other states ("non-Illinois Plaintiffs"). The

First Amended Complaint does not allege that the non-Illinois Plaintiffs had any relevant contacts with Illinois, or that their injuries resulted from Defendants' contacts with Illinois.

As two of the non-Illinois Plaintiffs were from New Jersey and thus not diverse, Plaintiffs filed a Second Amended Complaint on January 11, 2021, removing those two individuals but otherwise not changing their allegations (Doc. 16). On March 12, Defendants moved to dismiss the 108 new plaintiffs added after the initial complaint for lack of personal jurisdiction and lack of venue and further moved to sever claims among individual plaintiffs (Docs. 23-26). Plaintiffs timely responded on March 26 (Docs. 27-28), and Defendants filed reply briefs on April 9 (Doc. 29-30).

## ANALYSIS

**I.     Personal Jurisdiction**

Defendants move to dismiss claims by non-Illinois Plaintiffs pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Where a defendant seeks to dismiss based on a lack of personal jurisdiction, the plaintiff bears the burden of establishing such jurisdiction. *E.g.*, *Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 697 (7th Cir. 2015).

In diversity actions, a federal court will rely upon the law of personal jurisdiction in the forum state. *E.g.*, *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). Illinois' long-arm statute authorizes personal jurisdiction co-extensive with federal due process, and the Seventh Circuit has suggested that there is no operative difference between Illinois and federal due process limits on personal jurisdiction. 735 Ill. Comp. Stat. 5/2-209(c); *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002).

Under federal law, a court can have personal jurisdiction over a defendant only if the defendant has "certain minimum contacts with [the forum state] such that the maintenance

of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945) (quotations omitted). Courts have recognized two categories of personal jurisdiction: general and specific. *E.g.*, *Poletti v. Syngenta AG (In re Syngenta Mass Tort Actions)*, 272 F. Supp. 3d 1074, 1082 (S.D. Ill. 2017).

A defendant will be subject to general jurisdiction in a forum where they are "essentially at home[.]" *E.g. Daimler A.G. v. Bauman*, 571 U.S. 117, 119 (2014). A corporation is generally "at home" only in its state of incorporation and principal place of business, absent an "exceptional case[.]" *Id.* at 138. Here, Plaintiffs seek to argue that Defendants may be subject to general jurisdiction in Illinois, though they appear to concede that Defendants are incorporated in New Jersey and have their principal places of business there. Rather, Plaintiffs cite *Daimler* for the proposition that general jurisdiction will be established where a defendant's contacts with the forum are so "continuous and systematic as to render it "essentially at home[,]" *Id.* at 139. These phrases are taken out of context, however, and Plaintiffs seem to ignore the actual holding in *Daimler*, which severely limited general jurisdiction to place of incorporation and principal place of business. Perhaps Plaintiffs wish to argue that this case presents the kind of "exceptional case" discussed in *Daimler* that presents an exception to the standard rule. The only example of an "exceptional case," however, is *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952). Unlike in that case, which involved a corporation temporarily displaced by war, this action presents a very standard situation where defendants are incorporated and based in one jurisdiction yet still have significant operations elsewhere—if this is in some way exceptional, then the exception would be so broad as to consume the rule. In short, it seems preposterous to argue that Defendants are subject to general jurisdiction here.

Specific jurisdiction, on the other hand, is established where a defendant has "certain minimum contacts" with the forum. *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945). A defendant must have established such contacts by "purposefully avail[ing] itself" of the law of the forum state and the privilege of conducting activities therein, *Hanson v. Denckla*, 357 U.S. 235, 253 (1953), to the extent that it "should reasonably anticipate being haled into court there[.]" *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S 286, 297 (1980). Furthermore, the litigation must result from injuries that "arise out of or relate to" defendants' contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

In the past, this Court has found that these principles did not prevent it from exercising specific jurisdiction over a defendant for claims brought by non-Illinois plaintiffs. *Syngenta*, 272 F. Supp. 3d at 1083 (Herndon, J.). Subsequent rulings by the United States Supreme Court and the Illinois Supreme Court, however, have provided greater clarity on this issue. In *Bristol-Myers Squibb v. Superior Court of Calif.*, 137 S. Ct. 1773, 1780 (2017), the Supreme Court emphasized the importance of "an affiliation between the forum and the underlying controversy, principally, [an] activity or occurrence that takes place in the forum State and is therefore subject to the State's regulation." Specifically, the Supreme Court applied that principle to deny specific jurisdiction to nonresidents where:

> "the nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California. The mere fact that other plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims."

*Id.* at 1781.

Applying *Bristol-Myers Squibb* in another case where nonresident plaintiffs sought

to bring product liability claims against a manufacturer of medical devices, the Illinois Supreme Court found that "*Bristol-Myers* forecloses plaintiffs' theory of specific personal jurisdiction." *Rios v. Bayer Corp.*, 2020 Ill. LEXIS 538 at *11 (Ill. June 4, 2020). The Illinois Supreme Court noted that the defendants had directed certain activities in Illinois but found that the plaintiffs' claims did not "arise out of, or relate to, those activities in any meaningful sense of the terms." *Id.* at 13.

Most recently, the United States Supreme Court revisited *Bristol-Myers Squibb* in *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021), affirming jurisdiction where plaintiffs were "residents of the forum States" and each "brought suit in the most natural State[,]" contrasting this with the situation in *Bristol-Myers Squibb*.

Here, Plaintiffs seek to rely on *Syngenta* and other similar cases to support their claim that specific jurisdiction is proper here even where non-Illinois Plaintiffs' claims do not arise out of Defendants' contacts with the forum state. *Bristol-Myers Squibb* and its progeny, however, have made clear that this is improper—non-Illinois Plaintiffs should bring their actions in the forums where the activities giving rise to their claims occurred. Accordingly, the Court is inclined to agree with Defendants' argument that it lacks personal jurisdiction for claims by the non-Illinois Plaintiffs.

II.   **Venue**

Defendants also move to dismiss claims by nonresident Plaintiffs for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). When a defendant moves to dismiss for improper venue, the plaintiff bears the burden of showing that venue is proper. Venue in civil actions is governed by 28 U.S.C. § 1391, which provides that venue shall be proper in (1) the district in which any defendant resides, if all defendants reside

in the state where the district is located, or (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. If there is no district satisfying these criteria, then venue is proper in any district where the defendant is subject to personal jurisdiction. 28 U.S.C. § 1391(b).

Plaintiffs point to 28 U.S.C. § 1391(b)(2), asserting that a "substantial part of the events and omissions giving rise to nonresident Plaintiffs' causes of action occurred in this federal judicial district" (Doc. 16 at ¶352). As discussed in connection with personal jurisdiction, however, each Plaintiff appears have purchased, been prescribed, or otherwise obtained the device in question in his/her own home district, and there is no indication that the nonresident Plaintiffs have any connection to events or omissions relating to Defendant's products in this district. In their response to Defendants' motion to dismiss, Plaintiffs belatedly assert that "several of these Illinois Plaintiffs were implanted with Defendants' defective devices, underwent medical treatment, and otherwise were injured in this [] District[,]" but they do not point to any passage in the complaint that would indicate this, nor do they now supply any factual assertions in support of this bare allegation. Accordingly, the Court agrees that venue is improper for the six nonresident Plaintiffs.

### III. Transfer

Plaintiffs argue that transfer rather than dismissal is the appropriate remedy if the Court should find that it lacks personal jurisdiction or that venue is improper. Where a case has been filed in the wrong venue, the court shall dismiss, or it may choose to transfer the case to a proper venue if it is in the interest of justice. 28 U.S.C. § 1406. Courts have discretion to dismiss or transfer, though there is some tendency in favor of transfer over

dismissal, especially where the statute of limitations may prevent initiation of a new action and where a plaintiff's belief that venue was proper was in good faith and reasonable. *See, e.g.*, Wright & Miller, Federal Practice and Procedure § 3827.

Here, it seems possible that relevant statutes of limitations may inhibit Plaintiffs' ability to refile if the Court dismisses for lack of personal jurisdiction and improper venue. But the Court does not see any reasonable basis for Plaintiffs' belief that jurisdiction and venue were proper in this district. Rather, case law on both issues seems to clearly show that this district was not the proper choice. Furthermore, Plaintiffs are not now prepared to even identify what jurisdictions are the appropriate transferees, instead requesting the Court grant them a "stay of proceedings and leave to address the transfer more fully and … provide input on how they would like to proceed." (Doc. 28 at 9) (quotations omitted). This delay does not appear to be in the interests of justice and seems prejudicial to Defendants. Accordingly, the Court finds it is proper to dismiss non-Illinois Plaintiffs for lack of personal jurisdiction and dismiss nonresident Plaintiffs for improper venue.

## IV.    Severance of Claims

Defendants move to sever the claims of the remaining Plaintiffs pursuant to Federal Rule of Civil Procedure 21, arguing that their claims demand individualized inquiries into medical and legal causation.

Federal Rule of Civil Procedure 20 allows for permissive joinder of plaintiffs in a single action where (1) they assert any right to relief … arising out of the same transaction, occurrence or series of transactions or occurrences; and (2) any question of law or fact common to all plaintiffs will arise in the action. Both prongs must be satisfied for permissive joinder to be appropriate, though courts should read Rule 20 liberally to

effectuate its purpose of promoting trial convenience and expediting the final determination of disputes. *Bailey v. Northern Trust Co.*, 196 F.R.D. 513, 515 (N.D. Ill. 2000). Where parties are misjoined, a court may sever the action under Federal Rule of Civil Procedure 21. A district court has broad discretion in deciding whether to join or sever parties to an action. *Thompson v. Boggs*, 33 F.3d 847, 858 (7th Cir. 1994).

To determine whether an action "arises out of the same transaction" for the purposes of Rule 20(a)(1), courts have adopted a case-by-case approach, viewing "all logically related events entitling a person to institute a legal action against another … as comprising a transaction or occurrence." Wright & Miller, Federal Practice and Procedure § 1653 (citing *In re EMC Corp.*, 677 F.3d 1351, 1358 (Fed. Cir. 2012)).

Certain courts, including within this district, have observed that in medical products liability actions, "medical and legal causation present formidable obstacles under Rule 20." *McGrew v. Howmedica Osteonics Corp.*, 2015 U.S. Dist. LEXIS 3732 at *5 (S.D. Ill. Jan 13, 2015) (Yandle, J.) (quoting *Insolia v. Philip Morris, Inc.*, 186 F.R.D. 547, 549 (W.D. Wis. 1999)). This difficulty arises from situations where plaintiffs have received information about medical products through many different channels and "medical causation determinations would require highly individualized inquiries[.]" *Insolia*, 186 F.R.D. at 549. Indeed, other courts with this circuit have observed a "consistent reluctance … to treat products liability claims as arising from the same transaction or occurrence merely because they relate to the same medicine or medical device[.]" *Boles v. Eli Lilly & Co.*, 2015 U.S. Dist. LEXIS 141922 at 23 (S.D. Ind. Oct. 19, 2015). Most of these decisions appear to be unpublished, however, and the Seventh Circuit has not definitively weighed in on whether differences in causation truly prevent a finding of "the same transaction"

for purposes of joinder.

On the other hand, other courts have found consolidated claims to be appropriate in situations involving medical products similar to the one at issue here. For example, in *Eghnayem v. Boston Sci. Corp.*, 873 F.3d 1304, 1313-16 (11th Cir. 2017), the Eleventh Circuit upheld consolidation of four plaintiffs' suits involving product liability claims connected with a pelvic mesh product. Noting that causation was different for each plaintiff, the Eleventh Circuit nevertheless upheld the district court's consolidation, stating that "differences in causation are not enough, standing alone, to bar consolidation of products liability claims." *Id.* at 1314.

Here, the Court is inclined to follow the example of the Eleventh Circuit in *Eghnayem*. While there are indeed issues of causation that are different among the various plaintiffs, all of the claims clearly involve "logically related events" that constitute common transactions or occurrences relating to the marketing and provision of the medical devices in question. There are clearly common questions of fact and law that will arise in all of Plaintiffs' claims, and it is the view of the Court that judicial efficiency will be best served by keeping the actions consolidated at least during the course of discovery. The Court will consider separately at a later date the question of whether to keep the actions consolidated for trial. Accordingly, the Court denies the Motion to Sever.

## Conclusion

For the reasons set forth above, the Motion to Dismiss (Doc. 23) is **GRANTED**, and the Motion to Sever (Doc. 25) is **DENIED**.

This action shall proceed with solely the Initial Plaintiffs: Brandon Baity, Tamara Daily, Carrie Dodson, Debra Hyde, Patricia Milligan, April Ray, Diane Zappia, Kevin Baity,

Larry Milligan, and Steven Ray. All other Plaintiffs are **DISMISSED without prejudice**.

    **IT IS SO ORDERED.**

    **DATED:**   April 14, 2021

                                                                   **NANCY J. ROSENSTENGEL**
                                                                   **Chief U.S. District Judge**